**Jeryl Arlen WINN, Appellant,**

v.

**CONTINENTAL CASUALTY COMPANY, Appellee.**

**No. 690.**

Court of Civil Appeals of Texas, Tyler.

April 19, 1973.

Paul W. Leech, Grand Prairie, for appellant.

T. Michael Wilson, Dallas, for appellee.

DUNAGAN, Chief Justice.

Appellant, as the insured, brought this suit against appellee, as the insurer, in the County Court at Law # 3 of Dallas County, Texas, seeking to recover indemnity under an "Owners', Landlords' and Tenants' Liability Insurance Policy" for legal fees incurred and monies paid in connection with a pre-litigation settlement negotiated by appellant. Trial was to a jury.

Appellant-plaintiff in his original petition alleges that he was insured by appellee-defendant by virtue of an owners', landlords' and tenants' liability policy issued by the defendant to cover the appellant as owner of an apartment house located in the City of Dallas; that appellant while patrolling his premises for prowlers accidently shot a man; that such event was a covered "occurrence" as that term is defined in the policy; that appellant notified appellee of the event and appellee, after investigating the event, denied coverage and he (appellant) subsequently employed an attorney to effect settlement for which he paid the sums of $4,350.00 for settlement of claim and $750.00 for attorney's fees. No civil suit was filed. This suit

was brought to recover these payments which were incurred in settlement of the claim of the injured party.

Defendant in its first amended original answer sets up the following defenses:

1. That the actions of appellant were an intention tort and therefore the bodily injuries were not caused by an "occurrence" as that term is defined in the policy.

2. That the term "legally obligated to pay" applies only if the injured party sued and recovered judgment against the plaintiff.

3. That in any event, appellee was not liable for attorney's fees incurred by the appellant in settling the injured party's claim because no civil suit was filed.

At the conclusion of the testimony appellee made an oral motion for instructed verdict, which appears in the statement of facts, based on the following grounds:

1. There was no evidence that appellant inflicted any personal injuries upon the injured party.

2. There was no evidence to support a damage issue.

3. That the evidence showed as a matter of law that the actions of appellant were not an "occurrence" as defined in the policy.

The court sustained appellee's motion for an instructed verdict, and it is from this ruling and a take-nothing judgment that appellant has appealed.

Appellant first asserts that "the court erred in holding that the actions of plaintiff was (sic) not an occurrence as defined in the policy."

The evidence reflects that the appellant was the insured and appellee the insurer in an "Owners', Landlords' and Tenants' Liability Insurance Policy" which contained the following provision under Coverage A —Bodily Injury Liability:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of * * * bodily injury * * * to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of all claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlement."

With respect to the foregoing coverage provision, the term "occurrence" was defined by the policy as follows:

" 'Occurrence' means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

Appellant has alleged that under Coverage A, he is entitled to indemnity from appellee for legal fees incurred and monies paid in connection with a certain pre-litigation settlement which he, rather than appellee, negotiated. The facts are essentially as follows:

In the early morning hours of January 17, 1970, appellant heard noises outside his apartment. He picked up a pistol and went outside where he discerned that the noises were coming from the parking lot of a next-door apartment complex. He was scared. He then fired a warning shot in the general direction of the unidentified person or persons and went back into his apartment. He did not expect to hit the other man and if he hit anyone he did not

know it. An hour later, he was arrested by police officers and charged with assault to murder. The appellant notified appellee of the shooting incident. Appellant, thereafter, employed an attorney, Donald Scoggins, to represent him on the criminal aspect of the case.

While the assault-to-murder charges were pending, appellant was contacted by a man identified as Amos Burkett. Mr. Burkett wanted money and threatened to sue appellant. Appellant notified appellee that the man (Burkett) was "after him" for some money. Appellee denied coverage and refused appellant's demand that it negotiate a settlement. Thereafter, he also employed Scoggins to effect a settlement of the alleged civil claim.

Thereafter, on the morning of the hearing before the Grand Jury concerning the assault-to-murder charges, appellant and his lawyer met Burkett outside the Grand Jury Room and made a settlement whereby appellant gave $2,800.00 and a Ford Van in exchange for Burkett's dropping the criminal charges and giving a release of any civil claim. The assault-to-murder charges were thus dropped and appellant now wants appellee to reimburse him for the settlement.

■ In order to recover, appellant had the burden of bringing himself under the policy of insurance. Specifically, it was incumbent upon him to show that appellee had denied coverage after receiving notice of a claim by Amos Burkett for damages because of bodily injury caused by an "occurrence" as defined in Coverage A of the policy in question.

■ It is well-settled law that the obligation of a liability insurance company to defend a lawsuit brought against its insured by a third party is to be determined by the allegations of the complaint, 50 A.L.R.2d, Liability Insurer—Duty to Defend, 458 (1956). As the Texas Supreme Court held in Heyden Newport Chemical Corporation v. Southern General Insurance Company, 387 S.W.2d 22, 24 (Tex.1965):

"* * * in determining the duty of a liability insurance company to defend a lawsuit the allegations of the complainant should be considered in the light of the policy provisions without reference to the truth or falsity of such allegations and without reference to what the parties know or believe the true facts to be, or without reference to a legal determination thereof. * * *"

The great weight of authority both in Texas and in most other jurisdictions has consistently held that the complaining party's allegations control the question of whether the insurance carrier must provide a defense, Travelers Insurance Company v. Newsom, 352 S.W.2d 888 (Tex.Civ.App., Amarillo, 1961, writ ref., n. r. e.), and the insurance carrier cannot be called upon to furnish a defense unless the third party's claim against the assured is shown to be within coverage provisions of the policy. Federal Insurance Company v. Forristall, 401 S.W.2d 285 (Tex.Civ.App., Beaumont, 1966, writ ref., n. r. e.); Sewer Constructors, Inc. v. Employers Casualty Co., 388 S.W.2d 20, 23 (Tex.Civ.App., Houston, 1965, writ ref., n. r. e.); Travelers Insurance Company v. Newsom, supra, at 891 of 352 S.W.2d; Maryland Casualty Co. v. Moritz, 138 S.W.2d 1095 (Tex.Civ.App., Austin, 1940, writ ref.).

■ Similarly, in situations where an insured has filed suit against his insurance carrier seeking indemnity for pre-suit settlement on the grounds that the carrier wrongfully denied coverage, Texas courts have held that the nature of the third party's claim is determinative and that indemnification is proper only when the *claim* is shown to have been within the scope of policy coverage. Travelers Indemnity Company v. Equipment Rental Company, 345 S.W.2d 831 (Tex.Civ.App., Houston, 1961, writ ref., n. r. e.); 67 A.L.R.2d, Liability Insurance—Settlement, 1086 (1959).

Appellant says that he affected a settlement with Burkett after appellee denied coverage and that he is, therefore, entitled to indemnity from appellee under the contract of insurance. Appellant must show more; he must show that Burkett asserted a claim which was specifically within the scope of policy coverage as defined in "Coverage A–Bodily Injury Liability." And on this point, appellant had the burden of proof. Travelers Indemnity Company v. Equipment Rental Company, supra; see also, Sewer Constructors, Inc. v. Employers Casualty Co., supra; Maryland Casualty Company v. Knorpp, 370 S.W.2d 898 (Tex.Civ.App., Amarillo, 1963, writ ref., n. r. e.). In short, in contending that it was appellee's duty to defend Burkett's claim, appellant had the burden of producing evidence that the *claim* by Burkett against him was for damages arising out of an event alleged by Burkett to be "an accident * * * neither expected nor intended from the standpoint of the insured." The question is not whether the act of the insured was in truth and in fact unintentional, but whether Mr. Burkett *claimed* that the act was intentional.

A thorough review of the record reveals appellant failed to meet his burden of proof in this case. There is no evidence that Burkett ever asserted a claim against appellant which, by its nature and substance, was covered under appellee's policy of insurance. Nothing was pled, and during the course of the trial appellant did nothing more than mention the fact that Burkett "wanted money" and that appellant notified appellee that Burkett "wanted money." There is no evidence from which one can discern what allegations, if any, were actually made by Burkett, nor is there any evidence from which one can determine whether he claimed unintentional conduct on the part of appellant and thus an "occurrence" as defined in Coverage A.

There is no evidence Burkett ever claimed that appellant acted unintentionally or that Burkett claimed the events were such as to constitute "an accident" within the scope of Coverage A.

The fact that Burkett filed assault-to-murder charges against appellant and his (Burkett's) threat to give testimony before the Grand Jury in support of such charges would strongly indicate that Burkett must have regarded appellant's conduct as having been willful or intentional and, therefore, of such a nature as to be excluded from coverage under the definition of "occurrence."

We think the evidence clearly shows that the principal purpose of the negotiated settlement was for the purpose of inducing Burkett to drop his assault-to-murder charges, which after settlement Burkett immediately did. When appellant's attorney, Donald Scoggins, was asked what facts were considered when he recommended a settlement to his client he testified:

"There were many factors to consider; initially the one I was most immediately concerned about, of course, was the possibility of a criminal prosecution. The initial charge was a serious charge and it is one that we were making every effort to negotiate and settle prior to the Grand Jury possibly returning an indictment."

It is undisputed that appellant gave Burkett $2,800.00 and a truck for and in consideration of settlement as to both civil and criminal exposures and of course, with respect to the latter, appellant seeks no indemnification from appellee and makes no contention that coverage exists. However, there is no evidence in the record indicating any attempt on appellant's part to apportion his settlement consideration between the alleged civil coverage and the admitted criminal non-coverage.

As stated in 17 Tex.Jur.2d, Damages, sec. 228 (1960):

"When the damage results from two or more causes, and the defendant is lia-

ble for some of the causes but not all, in order that there be a recovery it is necessary that the plaintiff establish what portion of the damages resulted from the causes for which the defendant is liable. And his recovery will be limited to the damages for the injuries that he is able to establish were caused by the defendant's wrongful act. If he is unable to establish a proration of the damages, the plaintiff is entitled to no recovery. * * *"

 The same principle applies in cases involving the question of recovery under a policy of liability insurance. The burden of apportioning damages between coverage and non-coverage is on the insured, and as stated in 1 Long, The Law of Liability Insurance, sec. 4.25 at pp. 457–458 (1972):

"Where a jury returns a one-sum verdict, including damages for which the insurer is liable and also damages outside the scope of the policy coverage, the general rule is that the burden of apportioning damages is on the party seeking to recover from the insurer * * * Absent proof as to how much of the judgment comes within the coverage of the policy * * * he can recover no part of the judgment from the insurer."

The burden rests upon the plaintiff-appellant to separate damages caused by things for which the defendant is liable under contract from those damages caused by things excepted under the contract. Maurice Pincoffs Co. v. Southern Stevedoring Co., Inc., 489 S.W.2d 277 (Tex.1972) and City of San Antonio v. Meader, 326 S.W. 2d 557 (Tex.Civ.App., San Antonio, 1959, writ ref., n. r. e.).

In light of the foregoing authorities, appellant's failure to offer evidence apportioning the settlement payment, between alleged "coverage" and admitted "non-coverage" justifies the trial court's legal conclusion that there was no evidence of probative force offered by appellant to support a recovery, and thereby supports

the judgment of the trial court denying appellant any recovery.

This being an instructed verdict case we follow the rule that the evidence is to be considered in its most favorable light in support of the plaintiff-appellant's position and every reasonable inference deducible from the evidence is to be indulged in his favor. In our consideration of the case we have followed this rule. Lipson v. Dorfman, 491 S.W.2d 198 (Tex.Civ.App., Eastland, 1973); Seideneck v. Cal Bayreuther Associates, 451 S.W.2d 752 (Tex. 1970); Anderson v. Moore, 448 S.W.2d 105 (Tex.1969); Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60 (1953).

Having considered all points of error presented and finding none with merit, the trial court's judgment is affirmed.

Affirmed.