**Rita WILLCOX, Surviving Widow of Frederick Eugene Willcox, Jr., Deceased, Frederick Eugene Willcox, III, and Jeannie Willcox Osborne, Individually and As Representatives of the Estate of Frederick Eugene Willcox, Jr., and the Estate of Frederick Eugene Willcox, Jr., Plaintiffs,**

v.

**AMERICAN HOME ASSURANCE COMPANY and Herbert L. Jamison & Company, Defendants.**

**Civ. A. No. H–94–1690.**

United States District Court, S.D. Texas.

Sept. 13, 1995.

Leonard J. Meyer, Zimmerman, Flaum, Axelrad, Meyer & Wise, P.C., Houston, Texas, for Plaintiffs.

Jeffrey R. Parsons, Beirnes, Maynard & Parsons, Houston, Texas, for Defendants.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court are Defendant American Home Assurance Company's ("American Home") Motion for Summary Judgment (# 45), the Plaintiffs' Second Motion for Partial Summary Judgment (# 62), and Defendants American Home and Her-

bert L. Jamison & Company's ("Jamison") Motion for Summary Judgment (# 121). Having reviewed the motions, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that American Home's Motion for Summary Judgment (# 45) should be GRANTED, the Plaintiffs' Second Motion for Partial Summary Judgment (# 62) should be DENIED, and the Defendants' Motion for Summary Judgment (# 121) should be GRANTED IN PART and DENIED IN PART.

## I. *Factual and Procedural Background*

On April 10, 1991, Frederick Eugene Willcox, Jr. ("Willcox") was driving his vehicle toward his home in Houston, Texas. Jim C. Heath ("Heath"), a process server employed by Professional Civil Process ("PCP"), who was attempting to serve a subpoena on Willcox, blocked Willcox's vehicle with his own. PCP had been engaged by Daniel N. Lundeen ("Lundeen") of the law firm of Stroufe, Zamecki, Payne and Lundeen ("the law firm") to serve the subpoena. According to the plaintiffs, after blocking Willcox's vehicle, Heath rammed his vehicle into Willcox's, then got out of his vehicle, brandishing a gun, and approached Willcox to serve him with the subpoena. An altercation ensued during which time Willcox suffered a heart attack and subsequently died. Heath left the scene, returning only after Willcox's death.

On October 9, 1991, Plaintiffs Rita Willcox, Frederick Eugene Willcox, III, and Jeannie Willcox Osborne ("the Willcoxes"), the surviving family members, filed a lawsuit in state court against PCP and Heath ("*Willcox I*"). On September 25, 1992, the Willcoxes filed a first amended petition adding Lundeen, the law firm and Dr. Howard Rubin ("Rubin") as defendants, but did not request service on the new defendants at that time. On October 19, 1992, the Willcoxes settled their claims against Heath and PCP, and the trial court signed an order dismissing *Willcox I* as to Heath and PCP. On December 31, 1992, however, the Willcoxes filed a second amended petition deleting Rubin as a defendant, but still naming Heath and PCP as defendants, as well as Lundeen and the law firm. Service was requested and accom-

plished on Lundeen and the law firm in January 1993. On January 12, 1993, the law firm forwarded the second amended petition to American Home, the law firm's professional liability carrier, inquiring whether it would provide a defense. American Home responded on January 27, 1993, declining to provide a defense based on the bodily injury exclusion to the policy issued to the law firm, which had policy limits of $500,000. In early 1993, State Farm Lloyds ("State Farm"), the law firm's general liability carrier, with policy limits of $1 million, assumed the defense of the law firm in *Willcox I* subject to a reservation of rights.

On February 4, 1994, the court in *Willcox I* signed an order dismissing the case for lack of jurisdiction, concluding that it had lost jurisdiction of the case at the latest by November 19, 1992. The Willcoxes filed a new lawsuit against the law firm on February 9, 1994 ("*Willcox II*"), but never requested or effectuated service of citation on the law firm. On February 16, 1994, the Willcoxes, the law firm, and State Farm, reached a settlement in *Willcox I* and *II*. Under the terms of the settlement agreement, the Willcoxes release the law firm from liability and the law firm "agrees to the payment of the sum of TEN MILLION DOLLARS AND NO CENTS ($10,000,000.00) as damages" to the Willcoxes "with the **express understanding** between the Released Parties and Plaintiffs that this sum of $10,000,000.00 shall be payable **solely** from the proceeds, if any, of American Home Assurance Company Policy Number LPL 1985502, or from the proceeds, if any, of any claim, demand or lawsuit brought by the Plaintiffs or their assigns … but **under no circumstances shall any part of this sum of $10,000,000.00 be due, owing, or payable from any assets of the Released Parties, including but not limited to their personal, corporate, partnership, or trust assets.**" (emphasis in original). The settlement agreement further provides that State Farm will pay the Willcoxes $30,000 in cash, the Willcoxes will pay the law firm $10,000, and the law firm will assign its rights against American Home and Jamison to the Willcoxes.

On April 20, 1994, the Willcoxes, proceeding on their own behalf and as assignees of the law firm, filed the instant action against American Home and Jamison. On November 2, 1994, American Home filed its Motion for Summary Judgment seeking a determination that American Home did not breach a *Stowers* duty with respect to *Willcox I*. The Willcoxes, on December 28, 1994, filed their Second Motion for Partial Summary Judgment seeking a determination that American Home had received an offer to settle *Willcox I* within policy limits, thereby triggering a *Stowers* duty to act reasonably in such circumstances. By Order signed April 11, 1995, this court granted the Willcoxes' Motion for Partial Summary Judgment, finding that American Home had breached its duty to defend the law firm with respect to the second amended petition in *Willcox I*.

By Order signed July 7, 1995, the Willcoxes voluntarily dismissed their claims for violations of the Texas Insurance Code and Board Orders, breach of the common law duty of good faith and fair dealing, and negligence *per se* arising from violation of the Insurance Code. In a Memorandum and Order signed August 1, 1995, this court determined that American Home had not breached its duty to defend the law firm with respect to *Willcox II* because a duty to defend never arose, as citation and service were not requested or effectuated on the law firm. In the instant Motion for Summary Judgment, filed July 14, 1995, American Home and Jamison seek summary judgment on the Willcoxes' remaining causes of action for breach of contract, violations of the Texas Deceptive Trade Practices Act ("DTPA"), common law negligence, negligence *per se* based on violations of the DTPA, negligent misrepresentation, and breach of the *Stowers* duty.

## II. Analysis

### A. The Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for the motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which the movant believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir.1988). Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts to establish the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

### B. Contractual Claims

It is well settled under Texas law that once an insurer has breached its duty to defend, as in the instant case, the insured is free to proceed as he sees fit; he may engage his own counsel and either settle or litigate, at his option. *Ideal Mutual Ins. Co. v. Myers*, 789 F.2d 1196, 1200 (5th Cir.1986); *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 120 (5th Cir.1983); *Great Am. Indem. Co. v. City of Corpus Christi*, 192 S.W.2d 917, 919 (Tex. Civ.App.—San Antonio 1946, writ ref'd n.r.e.). As a consequence of the breach, the insurer is liable for any damages assessed against the insured, up to the policy limits, subject only to the condition that any settlement be reasonable. *Myers*, 789 F.2d at 1200; *Rhodes*, 719 F.2d at 120. When an

insured compromises and settles the case without the sanction of a judgment, the insured may, in a separate suit instituted against the insurer, recover the amount of damages he paid or promised to pay in settlement of the case upon sufficient proof of facts establishing that the settlement was made in good faith, upon a reasonable basis, and for a reasonable amount. *Texas United Ins. Co. v. Burt Ford Enters.*, 703 S.W.2d 828, 834 (Tex.App.—Tyler 1986, no writ). The damages recoverable on a contract claim for breach of the duty to defend do not include damages in excess of the policy limits. *Employers Nat'l Ins. Corp. v. Zurich Am. Ins. Co.*, 792 F.2d 517, 520 (5th Cir. 1986); *United Servs. Auto. Ass'n v. Pennington*, 810 S.W.2d 777, 784 (Tex.App.—San Antonio 1991, writ denied). The insured's damages are generally limited to policy limits, expenses of the insured in defending the suit (including reasonable attorney's fees and court costs), and reasonable and necessary attorney's fees and costs incurred in the suit to enforce the judgment or settlement against the insurer. *Id.; Burt Ford Enters.*, 703 S.W.2d at 835.

■ Although, as here, an insurer may have owed its insured a duty to defend, it does not, even by breaching that duty, necessarily owe the insured a duty to pay all damages assessed. *Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d 1485, 1493 (5th Cir.1992). An insurer's wrongful refusal to defend does not estop it or operate as a waiver of its right to assert the policy defense of non-coverage. *Id.* at 1493; *Burt Ford Enters.*, 703 S.W.2d at 833. The damages recited in either a judgment or a settlement of the underlying lawsuit must be apportioned between claims covered by the policy and those that are not. *Enserch Corp.*, 952 F.2d at 1494. In the context of a settlement, indemnification is proper only when the claims settled are shown to be within the scope of policy coverage. *Winn v. Continental Casualty Co.*, 494 S.W.2d 601, 604 (Tex. Civ.App.—Tyler 1973, no writ). The insurer is "legally obligated" to pay damages for covered claims, whether the legal obligation is fixed by judgment or by contract. The burden of apportioning damages between covered and non-covered claims, however,

rests on the insured. *Id.* at 605; *see Maurice Pincoffs Co. v. Southern Stevedoring Co., Inc.*, 489 S.W.2d 277, 278 (Tex.1972).

■ An insurer that breaches its duty to defend cannot enforce against the insured any conditions precedent in the policy; the insured is no longer constrained by "no action" or "no voluntary assumption of liability" clauses. *Enserch Corp.*, 952 F.2d at 1496 n. 17; *Myers*, 789 F.2d at 1200; *Rhodes*, 719 F.2d at 120; *Gulf Ins. Co. v. Parker Prods., Inc.*, 498 S.W.2d 676, 679 (Tex.1973); *St. Paul Ins. Co. v. Rahn*, 641 S.W.2d 276, 278 (Tex.App.—Corpus Christi 1982, no writ); *First Nat'l Indem. Co. v. Mercado*, 511 S.W.2d 354, 357–58 (Tex.Civ.App.—Austin 1974, no writ). In *Enserch Corp.*, the court likewise determined than an insurer's reliance on a "legal liability" clause is barred where the insurer breaches its duty to defend, commenting that "[i]nsurers who wrongfully refuse to defend their insureds lose the benefit of their policies' procedural requirements." 952 F.2d at 1496 n. 17. Hence, American Home cannot use the procedural requirements of the policy at issue to defeat the Willcoxes' contractual claims.

■ Moreover, in Texas, a covenant not to execute against the insured, given by the plaintiff in an underlying suit, does not release the insurance carrier from liability. *Foremost County Mut. Ins. Co. v. Home Indem. Co.*, 897 F.2d 754, 758 (5th Cir.1990) (citing *Young Men's Christian Ass'n v. Commercial Standard Ins. Co.*, 552 S.W.2d 497, 504–05 (Tex.Civ.App.—Fort Worth 1977), *writ ref'd n.r.e.*, 563 S.W.2d 246 (Tex.1978) (per curiam)). As long as the insured does not act in bad faith or in collusion with the person claiming against him, the covenant not to enforce adjudged damages against the insured does not bar recovery from the insurer within its policy limits. *Whatley v. City of Dallas*, 758 S.W.2d 301, 310 (Tex. App.—Dallas 1988, writ denied). As the *Enserch* court observed:

Texas courts readily apply covenants not to execute (allowing enforcement of a judgment directly against a non-defending insurer), and have even done so in a case

where the policy contained identical "legally obligated" language.

952 F.2d at 1496 n. 17. Indeed, even in *State Farm Fire & Casualty Co. v. Gandy,* 880 S.W.2d 129, 138–39 (Tex.App.—Texarkana 1994), *writ granted* (Nov. 3, 1994), the court, while soundly denouncing the covenant not to execute at issue there, characterizing it as a sham and corruptive of the judicial process, still permitted the plaintiff in the underlying lawsuit to recover on the policy.

The existence of a covenant not to execute, however, precludes recovery in excess of policy limits. As explained in *Whatley:*

> To recover more than the policy limits from the insurer, the judgment creditor must assert the insured's injury. If the judgment cannot be enforced against the insured, no such injury exists. The insured may assign to his judgment creditor any claim he has against his insurer for payment of the excess award, but such assigned claim is actionable only as long as the insured remains liable for the excess damages. To allow the creditor to release the insured from liability for such excess damages without effecting the release of the insurer would give the creditor and insured the power unilaterally to extend the insurer's liability. This would defeat, not serve, public policy.

758 S.W.2d at 310.

■ Like covenants not to execute, covenants not to enforce a settlement agreement do not excuse an insurer from its obligation to pay covered claims up to the policy limits. *Myers,* 789 F.2d at 1203. In *Myers,* although the insurance policy limited coverage to $100,000 and the plaintiffs' state action prayed for only $400,000, the settlement was for $750,000. As in the current situation, the plaintiffs agreed "not to enforce this settlement agreement against [the insured] . . . by any legal action or claim save and except any legal action or claim for the proceeds of any insurance that might be provided by Ideal Mutual Insurance Company and no other." *Id.* at 1199. The agreement also included an assignment by the insured to the state court plaintiffs of any and all claims the insured had or may have in the future against the insurance company. *Id.* The court observed that the settlement agreement, on its face, did not impose liability upon Ideal under the terms of the policy, but attempted to preserve a claim only for the proceeds of the insurance policy. *Id.* at 1203. The court, nevertheless, held that such a settlement agreement, containing a covenant not to enforce, even in a suit where the insurer did not breach its duty to defend, does not operate to discharge the insurer's obligations under its policy, unless the insurer is actually prejudiced or deprived of a valid defense by the actions of its insured: *Id.* As in the *Myers* case, no such prejudice or deprivation of a valid defense has been shown here. The insurer is still legally obligated by contract to pay the settlement amount, but its obligation is enforceable only against one of its assets, the proceeds of a specific insurance policy.

■ Therefore, in the case at bar, the Willcoxes, relying on the settlement agreement, may pursue their contractual claims against American Home up to the policy limits of $500,000, subject to their proving the settlement agreement to be reasonable and not the product of fraud or collusion. The damages for which recovery is sought must be apportioned between covered and non-covered claims. They may also recover any sums the law firm expended in defense of *Willcox I,* aside from the $30,000 in defense costs paid by State Farm. Under the terms of the State Farm policy, the law firm transferred to State Farm the right to seek recovery for any payments made by State Farm on its behalf. *See* State Farm Policy, § IV, ¶ 8. State Farm, in turn, assigned its subrogation rights to recover the $30,000 to American Home in the Agreement of Settlement, Release and Assignment between State Farm and American Home dated July 31, 1995. Consequently, the Willcoxes lack standing to pursue a claim for the $30,000 in defense costs previously paid by State Farm.

### C. Extra–Contractual Claims

#### 1. Stowers

■ An insured's cause of action for negligence in failing to settle a claim was first recognized in Texas in *G.A. Stowers Furniture Co. v. American Indem. Co.,* 15 S.W.2d

544, 547 (Tex.Comm'n App.1929, holding approved). Under the *Stowers* decision, insurers are held "to that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business" in responding to settlement demands within policy limits. *Id.; accord Texas Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 314 (Tex.1994); *American Physicians Exch. v. Garcia*, 876 S.W.2d 842, 848 (Tex. 1994). Through the *Stowers* duty, insurers may be liable for negligently failing to settle claims made against their insureds within policy limits and may be required to pay the full amount of any judgment rendered, even if it is in excess of policy limits. *Soriano*, 881 S.W.2d at 314; *Hernandez v. Great Am. Ins. Co.*, 464 S.W.2d 91, 95 (Tex.1971); *G.A. Stowers Furniture Co.*, 15 S.W.2d at 547–48.

Under reported Texas decisions, the *Stowers* duty arises only when an insurer undertakes a defense, because in that circumstance, the insurer assumes the responsibility to act as the exclusive and absolute agent of the insured in all matters pertaining to the questions of litigation and, thus, must act as an ordinarily prudent person. *Id.* at 547. It is this right to make strategic decisions that imposes extra-contractual duties on a defending carrier. *See* Daniel P. Callahan, "War on Two Fronts," *Texas Bar Journal*, July 1995, at 676. None of the Texas cases has imposed excess liability solely because the insurer denied coverage and refused to take responsibility for defending the insured. *Zurich Am. Ins. Co.*, 792 F.2d at 520. Although the Texas Supreme Court has not addressed the issue, the Fifth Circuit, however, made an "Erie guess" and decided that the duty to settle a claim persists after coverage has been denied. *Id.; Blakely v. American Employers' Ins. Co.*, 424 F.2d 728, 734 (5th Cir.1970). In view of the current trend of decisions issued by the Texas Supreme Court, the Fifth Circuit's "Erie guess" may no longer be viable.

 In any event, a *Stowers* settlement demand must propose to release the insured fully in exchange for a stated sum of money or the limits of the policy. *Soriano*, 881 S.W.2d at 314; *Garcia*, 876 S.W.2d at 848–49. The *Stowers* duty is not activated unless three prerequisites are met: (1) the claim against the insured is within the scope of coverage; (2) there is a demand within policy limits, and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment. *Soriano*, 881 S.W.2d at 314; *Garcia*, 876 S.W.2d at 849. A demand above policy limits, no matter how reasonable, does not trigger the *Stowers* duty to settle. *Soriano*, 881 S.W.2d at 314–15; *Garcia*, 876 S.W.2d at 849. Moreover, the duty under *Stowers* does not require an insurer to make or solicit offers to settle third-party insurance claims. *Id.* at 851. In addition, a demand must be unconditional. *See Insurance Corp. of Am. v. Webster*, 906 S.W.2d 77, 79–80 (Tex.App.—Houston [1st Dist.], no writ history); *Garcia*, 876 S.W.2d at 849; *see also Danner v. Iowa Mut. Ins. Co.*, 340 F.2d 427, 429–30 (5th Cir.1964); *Jones v. Highway Ins. Underwriters*, 253 S.W.2d 1018 (Tex.Civ.App.—Galveston 1952, writ ref'd n.r.e.).

 In the instant case, American Home received only two settlement demands, one dated November 30, 1993, and the other dated December 28, 1993. The December 28 letter, sent originally by plaintiffs' counsel to counsel for the law firm, states:

My clients will release your clients from all liability for the acts and omissions complained about in exchange for payment of the sum of $1.5 million, unless your clients can demonstrate to the satisfaction of my clients that all their available insurance coverage is less in amount, in which event, the amount of my client's demand will equal that lesser amount.

In the November 30 letter, which American Home did not receive until after it had received the December 28 letter in which the demand was increased to $1.5 million, states:

Before we continue discovery and preparation for a jury trial, my clients have authorized me to first offer to your clients a complete dismissal and release of their claims in exchange for your clients' tender to this office of the sum of $1,000,000, which we understand to represent the full amount of insurance extending to my

clients' claims. Our clients have decided to offer this settlement arrangement based upon the written representation that there is no other available insurance coverage. By letter to American Home dated January 19, 1994, plaintiffs' counsel described the December 28 letter as "containing an amended settlement demand for policy limits of both insurance policies available to your insured (unless it could be demonstrated that available insurance was less in amount), specifically including a demand for tender of the limits of the American Home Policy."

These are not the unconditional offers of settlement required to trigger a *Stowers* duty. Demonstrably, neither demand offered a full release of the insured for an amount within the $500,000 limits of the American Home policy. For *Stowers* purposes, the State Farm and American Home policies could not be "stacked" because they did not overlap. *See Garcia*, 876 S.W.2d at 853–54. The American Home policy is strictly a professional liability policy for errors and omissions in the practice of law, while the State Farm policy is a commercial general liability policy with an express exclusion for professional services performed by the law firm. *See* State Farm Policy, EXCLUSION—DESIGNATED PROFESSIONAL SERVICES. The law firm, like Dr. Garcia, did not purchase malpractice insurance for $1.5 million in coverage, as it could have done by purchasing excess or umbrella coverage. *See Garcia*, 876 S.W.2d at 854–55. Moreover, as in *Garcia*, the settlement demands were conditioned on both insurers accepting jointly and tendering their full policy limits. *See id.* at 845. In addition, the November 30 demand for $1 million was conditioned on there being no other insurance available, and the December 28 demand for $1.5 million conditioned on the insured not being able to prove a lesser amount of coverage. *See Webster*, 906 S.W.2d at 80–81. This is not a situation where State Farm, the other carrier involved, tendered its policy limits of $1 million, where American Home, by tendering its policy limits of $500,000, could settle the dispute. Instead, State Farm denied liability and filed a declaratory judgment action against the law firm. Thus, American Home never had an opportunity to settle *Willcox I*

within its policy limits of $500,000, and, hence, it cannot be found liable under the *Stowers* doctrine.

■ Furthermore, even if a *Stowers* duty existed, the inclusion in the settlement agreement of the covenant not to enforce the settlement except against the proceeds of the insurance policy or the proceeds of any action brought by the law firm against American Home negates the Willcoxes' right to recover in excess of policy limits. "[A]n insurer does not escape its contractual obligations with a covenant not to execute, but a successful covenant not to execute prevents any injury that could give rise to a *Stowers* claim." *Foremost County Mut. Ins. Co.*, 897 F.2d at 759; *see also Whatley*, 758 S.W.2d at 310. Therefore, summary judgment is appropriate as to the *Stowers* claim.

### 2. *DTPA Violations and Negligent Misrepresentation*

■ Without any pertinent factual recitation and without detailing the cited provisions of the Act, the Willcoxes allege in their second amended complaint that the defendants violated §§ 17.46(b)(12), (19) and 17.50(a)(1), (3), (4) of the DTPA. The DTPA declares false, misleading, or deceptive acts and practices in the conduct of any trade or commerce to be unlawful. Tex.Bus. & Com. Code Ann. § 17.46(a). "False, misleading or deceptive acts or practices" include "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law" and "representing that a guarantee or warranty confers or involves rights or remedies which it does not have or involve...." Tex.Bus. & Com.Code Ann. § 17.46(b)(12), (19). Under § 17.50(a):

(a) A consumer may maintain an action where any of the following constitute a producing cause of actual damages:

(1) the use or employment by any person of a false, misleading, or deceptive act or practice that is specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter;

\*　　\*　　\*　　\*　　\*　　\*.

(3) any unconscionable action or course of action by any person; or

(4) the use or employment by any person of an act or practice in violation of Article 21.21, Texas Insurance Code, as amended, or rules or regulations issued by the State Board of Insurance under Article 21.21, Texas Insurance Code, as amended.

Tex.Bus. & Com.Code Ann. § 17.50(a)(1), (3), (4). An insured may recover under the DTPA against an insurer if he can show that the insurer or its agents engaged in a false, misleading, or deceptive act or practice, as defined in § 17.46(b), that was a producing cause of damage to him. *See Celtic Life Ins. Co. v. Coats,* 885 S.W.2d 96, 99 (Tex.1994); *Gandy,* 880 S.W.2d at 135; *see also Weitzel v. Barnes,* 691 S.W.2d 598, 600 (Tex.1985). The Willcoxes abandoned any right to recovery under § 17.50(a)(4), however, when they voluntarily dismissed all causes of action based on the Texas Insurance Code and the rules and regulations of the State Board of Insurance. *See* Order signed July 7, 1995.

The Willcoxes also assert in their second amended complaint that the defendants engaged in negligent misrepresentation. Negligent misrepresentation occurs when: (1) a representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Federal Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991); *Airborne Freight Corp. v. C.R. Lee Enters, Inc.,* 847 S.W.2d 289, 294 (Tex.App.—El Paso 1992, writ denied). The type of "false information" contemplated in a negligent misrepresentation case is a misstatement of existing fact. *Id.*

In the instant case, the Willcoxes have failed to adduce adequate summary judgment evidence to support either a DTPA or negligent misrepresentation claim. They have presented no evidence of a misrepresentation made either before or after the policy was issued. At deposition, Alton W. Payne, Jr., the designated representative of the insured law firm confirmed that neither of the defendants made any misrepresentations in the issuance of the policy. The following colloquy ensued at pages 154–55:

Q: Mr. Payne, let—let me ask you a couple further questions. The firm and its members don't have any complaint about the issuance of the policy of insurance that's been marked as Exhibit P–2, do they?

A: No.—

Q: Okay.

A: —not that I know of.

Q: There are no—no claims that you're aware of by the firm or that the firm has regarding the issuance of the policy; is that correct?

A: That's correct.

Q: Okay. And you're not—you don't claim that either Herbert Jamison or American Home Assurance Company did anything wrong or made any misrepresentations or did anything that might be the basis for any claims by the firm against either of those companies, in the issuance of the policy; is that correct?

A: Yes.

Moreover, in the Willcoxes' answers to interrogatories dated June 30, 1995, they were unable to identify even one misrepresentation or unfair or deceptive act or practice. *See* Plaintiffs' Answers to Interrogatories Propounded by American Home Assurance Company, Nos. 9 & 10.

The only statements made by the defendants to the law firm proffered as summary judgment evidence are included in American Home's letter of January 27, 1993, in which it declined to defend or indemnify the law firm for the Willcoxes' claims. This letter states, in pertinent part:

Our review of the facts as presented indicate that this complaint is for wrongful death resulting from the serving of a subpoena.

\* \* \* \* \* \*

Since this is a claim for bodily injury and death brought as a wrongful death action it

falls directly within the exclusion as cited above. We must therefore regretfully advise that we cannot accept this matter as a covered claim under the policy.

We will not respond as to the defense of this matter and we will not accept responsibility for any expense or indemnity which may arise from the matter.

This letter cannot be viewed as any type of misrepresentation, as it merely accurately states American Home's position that it will not provide a defense to the law firm. Furthermore, because American Home declined to provide a defense, there is no evidence that it made any additional representations to the law firm concerning the case.

■ Moreover, even if a misrepresentation were made, there is no evidence that it was a producing cause of damage to the law firm. By virtue of the covenant not to enforce the settlement agreement, the law firm has not sustained any injury or loss as a result of an alleged misrepresentation. *See Foremost County Mut. Ins. Co.*, 897 F.2d at 759; *Whatley*, 758 S.W.2d at 310. Such lack of injury forecloses any recovery for violation of the DTPA or for negligent misrepresentation.

■ When queried about their DTPA claim, plaintiffs' counsel, in a telephone conference belatedly identified the misrepresentation as being that American Home misrepresented that it would defend under "x" circumstances. This assertion is not supported by proper summary judgment evidence, but, if it were, it states nothing more than a breach of contract claim for failure to defend under the insurance policy. Engrafting a DTPA or negligent misrepresentation claim upon every breach of duty to defend claim would impermissibly expand the scope of such a cause of action, undermining the long line of authority holding that when an insurer breaches its duty to defend, the plaintiff may recover only up to the policy limits. *See Zurich Am. Ins. Co.*, 792 F.2d at 520; *Myers*, 789 F.2d at 1200; *Rhodes*, 719 F.2d at 120; *Burt Ford Enters.*, 703 S.W.2d at 835. It is especially inappropriate in situations, where, as here, covenants not to execute or enforce independently preclude recovery in excess of policy limits due to the lack of any real injury to the insured. *See Foremost County Mut. Ins. Co.*, 897 F.2d at 759; *Whatley*, 758 S.W.2d at 310. The Willcoxes have not cited any Texas cases finding a DTPA violation or a viable claim for negligent misrepresentation premised solely upon an insurer's breach of its duty to defend.

■ Likewise, the Willcoxes have adduced no summary judgment evidence supporting a claim of unconscionability under the DTPA, nor have they directed the court's attention to any cases finding an insurer's breach of its duty to defend to be unconscionable under the Act. The DTPA defines an "unconscionable action or course of action" as follows:

(5) "Unconscionable action or course of action" is an act or practice which, to a person's detriment:

(A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

(B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration.

Tex.Bus. & Com.Code Ann. § 17.45(5). Unconscionability is defined not in terms of the defendant's intent or conduct, but according to the objective result of the transaction. *Sidco Prods. Mktg., Inc. v. Gulf Oil Corp.*, 858 F.2d 1095, 1101 (5th Cir.1988); *Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex.1985). This case, where the insured is a law firm, does not involve the type of unsophisticated consumer, the disparity in bargaining position, or the egregious conduct common to the cases where a defendant has been found to have engaged in unconscionable conduct. *See, e.g., Sidco Prods. Mktg., Inc.*, 858 F.2d at 1101; *Franks v. Associated Air Ctr., Inc.*, 663 F.2d 583, 593 (5th Cir.1981); *Bennett v. Bailey*, 597 S.W.2d 532, 535 (Tex.Civ.App.— Eastland 1980, writ ref'd n.r.e.). Likewise, there is no evidence of a gross disparity in value between the price the law firm paid for its professional liability coverage and the worth of the policy, as needed to prevail on a claim of unconscionability. *See Sidco Prods. Mktg., Inc.*, 858 F.2d at 1100. Merely because, in this instance, American Home de-

clined to defend the law firm does not mean that the insurance policy itself is without value. Finally, even if an unconscionable act were found to have occurred, there is no evidence of detriment to the insured law firm, as the covenant not to enforce the settlement agreement forecloses any finding of detriment. *See Foremost County Mut. Ins. Co.*, 897 F.2d at 759; *Whatley*, 758 S.W.2d at 310. Therefore, the Willcoxes are precluded from proceeding on their DTPA and negligent misrepresentation claims, as there exists no outstanding issue of material fact concerning these claims.

### 3. *Negligence and Negligence* Per Se

In *Ranger County Mut. Ins. Co. v. Guin*, 723 S.W.2d 656, 659 (Tex.1987), the Texas Supreme Court stated that the basis of an action against an insurer for negligence in handling a claim is not limited to an insurer's failure to settle a claim within policy limits. Rather, according to the court in *Ranger*, an insurer's duty to the insured extends to the full range of the agency relationship, including investigation, preparation for defense of a lawsuit, trial of the case, and reasonable attempts to settle. *Id.; Gandy*, 880 S.W.2d at 136. This principle was reaffirmed in the concurring opinion in *American Centennial Ins. Co. v. Canal Ins. Co*, 843 S.W.2d 480, 485 (Tex.1992), a case that, unlike most, discusses negligence claims against an insurer not involving a failure to settle within policy limits.

In *Garcia*, however, the Texas Supreme Court appeared to restrict the scope of these extra-contractual duties. The court stated:

> In the context of a *Stowers* lawsuit, evidence concerning claims investigation, trial defense, and conduct during settlement negotiations is necessarily subsidiary to the ultimate issue of whether the claimant's demand was reasonable under the circumstances, such than an ordinarily prudent insurer would accept it. Although the dissent relies on language in *Ranger* that is dictum, given that the only negligence claim presented in *Ranger* was a *Stowers* claim, ... we have no quarrel with the notion that a formal demand is not "an absolute prerequisite," ... for holding an insurer liable for damages caused by its misconduct other than a *Stowers* breach. However, the *Stowers* remedy of shifting the risk of an excess judgment onto the insurer is inappropriate absent proof that the insurer was presented with a reasonable opportunity to prevent the excess judgment by settling within the applicable policy limits.

*Garcia*, 876 S.W.2d at 849 (citations omitted). Thus, *Garcia* seems to say that, while an insured may assert *Ranger*-type negligence claims against an insurer, the insured's recovery cannot exceed the policy limits. The dissent in *Garcia* construed the majority opinion even more narrowly, commenting:

> Under the court's analysis, an insurer has no duty to act as an ordinarily prudent person in business management to make reasonable attempts to settle or even to act in good faith until it receives a formal settlement demand within policy limits from the plaintiff.

*Id.* at 865.

■ Negligence claims, like other extra-contractual claims, generally arise only when the insurer undertakes a defense, not when the insurer refuses to defend. *See* "War on Two Fronts," at 676. It is only then that the duties of investigation, preparation of a defense, trial of the case, and responding to settlement demands come into play. *Id.; Pennington*, 810 S.W.2d at 783. Moreover, while the law in this area may be somewhat nebulous, it is clear that to prevail on a claim of negligence, the insured must proffer some evidence of negligence. In the instant case, neither the pleadings nor the summary judgment record reveals the specific acts of negligence the Willcoxes are contending that the defendants committed. Plaintiffs' counsel, when queried in a telephone conference, stated that the plaintiffs' allegation of negligence rested on American Home's failure to make an adequate investigation of the Willcoxes' claim, leading to its refusal to tender a defense to the law firm.

■ To ascertain whether an insurer owes a duty to defend, however, independent investigation is not necessary; instead, the "eight corners" or "complaint/allegation" rule applies. Under this rule, one looks only to

the pleadings and the insurance policy at issue to determine whether a duty to defend exists. *Gulf States Ins. Co. v. Alamo Carriage Serv.,* 22 F.3d 88, 90 (5th Cir.1994); *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.,* 1 F.3d 365, 369 (5th Cir.1993); *Enserch Corp.,* 952 F.2d at 1492; *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus,* 633 S.W.2d 787, 788 (Tex. 1982); *Cullen/Frost Bank v. Commonwealth Lloyd's Ins. Co.,* 852 S.W.2d 252, 255 (Tex. App.—Dallas 1993, writ denied). The allegations of the complaint are taken as true, and the duty to defend arises if the complaint alleges "a claim that is 'potentially' covered by the applicable policy." *Alamo Carriage Serv.,* 22 F.3d at 90; *Gulf Chem. & Metallurgical Corp.,* 1 F.3d at 369; *Enserch Corp.,* 952 F.2d at 1492; *McManus,* 633 S.W.2d at 788.

In essence, the Willcoxes' "negligence claim" is merely a claim for breach of the duty to defend—a contract, not a tort, claim. *Pennington,* 810 S.W.2d at 783–84. As the *Pennington* court noted, no Texas case has found or discussed a cause of action for the insurer's negligent handling of a claim by wrongfully refusing to defend its insured. *Id.* at 783. In order for a tort duty to arise out of a contractual duty, *i.e.,* a negligent failure to perform a contract, the liability must arise "independent of the fact that a contract exists between the parties"; the defendant must breach a duty imposed by law rather than by the contract. *Id.* (quoting *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex.1991)); *Janicek v. KIKK, Inc.,* 853 S.W.2d 780, 781–82 (Tex.App.—Houston [14th Dist.] 1993, writ denied); *River Consulting, Inc. v. Sullivan,* 848 S.W.2d 165, 170 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *see Montgomery Ward & Co. v. Scharrenbeck,* 204 S.W.2d 508, 510 (Tex.1947). Generally, there is no tort liability for nonfeasance, *i.e.,* for failing to do what one has promised to do in the absence of a duty to act apart from the promise made. *DeLanney,* 809 S.W.2d at 495 n. 2 (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 92 at 655 (5th ed. 1984)); *Janicek,* 853 S.W.2d at 782. If the defendant's conduct would impose liability only because it breaches the parties' agreement, the claim is contractual. *Pennington,* 810 S.W.2d at 783. Similarly, "[w]hen the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." *DeLanney,* 809 S.W.2d at 494. Economic loss to the subject matter of the contract does not give rise to tort liability. *Pennington,* 810 S.W.2d at 783.

In the case at bar, as in *Pennington,* no liability arises in the absence of a contract—the insurance policy. *See id.* Without the policy, American Home had no insured and no duty to defend. *See id.* No legal duty of adhering to the contract terms has been imposed by law. *Id.* Hence, in the absence of pleadings and proof that the insurer failed to act in good faith and to deal fairly with its insured or that it negligently failed to accept a settlement, no tort liability can attach. *Id.* at 784. Therefore, under *Pennington,* by wrongfully refusing to defend the law firm, American Home cannot be held liable in tort for negligent handling of a claim.

Neither the Texas Supreme Court nor the other Texas Courts of Appeal have addressed this precise issue. This court cannot disregard decisions of the Texas Court of Appeals, such as *Pennington,* unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *Rogers v. Corrosion Prods., Inc.,* 42 F.3d 292, 295 (5th Cir.), *cert. denied,* ——— U.S. ———, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995); *Exxon Co. v. Banque De Paris Et Des Pays–Bas,* 889 F.2d 674, 676 (5th Cir. 1989), *cert. denied,* 496 U.S. 943, 110 S.Ct. 3230, 110 L.Ed.2d 676 (1990); *Taylor v. Jim Walter Corp.,* 731 F.2d 266, 267 (5th Cir. 1984). Here, the parties have presented no persuasive data that the Texas Supreme Court would hold otherwise. Indeed, in view of recent decisions of the court limiting the scope of an insurer's extra-contractual claims, as well as its reluctance to transform contract claims into tort claims, it seems likely that the Texas Supreme Court would hold in line with *Pennington* and reject a "negligence" claim based solely on an insurer's breach of its duty to defend.

As to negligence *per se*, the Willcoxes' assertions rest upon alleged unexcused violations of the DTPA. Because the Willcoxes have failed to produce evidence of any violations of the DTPA, the plaintiffs cannot prevail on their negligence *per se* claims. Hence, the Willcoxes will not be permitted to proceed on their negligence or negligence *per se* claims at trial. American Home and Jamison are entitled to judgment as a matter of law on these claims.

### III. *Conclusion*

 Accordingly, American Home's Motion for Summary Judgment (# 45) is GRANTED and Plaintiffs' Second Motion for Partial Summary Judgment (# 62) is DENIED, as the plaintiffs have failed adduce evidence of a *Stowers* violation. Defendants' Motion for Summary Judgment (# 121) is GRANTED IN PART and DENIED IN PART. Although the Willcoxes may proceed on their contractual claims, they have failed to proffer sufficient summary judgment evidence to support their extra-contractual claims based upon the *Stowers* doctrine, the DTPA, common law negligence, negligent misrepresentation, or negligence *per se*. Therefore, summary judgment is GRANTED on the plaintiffs' extra-contractual claims, but is DENIED as to their contractual claims under the insurance policy. With respect to the Willcoxes' contractual claims based on *Willcox II*, summary judgment is GRANTED. American Home had no duty to defend in *Willcox II* because its insured was never served with the lawsuit, as detailed in this court's Memorandum and Order signed August 1, 1995.

IT IS SO ORDERED.