Reversed and Remanded and Opinion filed December 4, 2003









Reversed and Remanded and Opinion filed December 4,
2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00241-CV

____________

 

COMSYS INFORMATION TECHNOLOGY
SERVICES, INC. f/k/a METAMOR INFORMATION TECHNOLOGY SERVICES, INC. f/k/a COMSYS
TECHNICAL SERVICES, INC.,
Appellant

 

V.

 

TWIN CITY FIRE INSURANCE
COMPANY AND SPECIALTY RISK SERVICES, INC. f/k/a ITT SPECIALTY RISK SERVICES,
INC.,
Appellee

 



 

On Appeal from the 234th
District Court

Harris County, Texas

Trial Court Cause No. 00-40118

 



 

O P I N I O N

Comsys Information Technology Services, Inc. f/k/a Metamor
Information Technology Services, Inc. f/k/a Comsys Technical Support Services,
Inc. (AComsys@) appeals the denial of its summary
judgment against Twin City Fire Insurance Company and Specialty Risk Services,
Inc. f/k/a ITT Specialty Risk Services, Inc. (hereafter jointly referred to as ATwin City@) and the granting of Twin City=s summary judgment.  We reverse and remand.








Comsys= predecessor, COREStaff, Inc.,
purchased an Excess Temporary Employment Contractors Errors or Omissions
Liability Insurance Policy from Twin City. 
The effective date of the policy was July 25, 1997; it was to expire on
July 25, 2000.  The policy had a limit of
$5,000,000 and a self-insured retention of $250,000.  

Texas State Low Cost Insurance, Inc. (ATSLCI@) hired Comsys to develop and
implement a project known as the AComputer Automated Records
System (CARS) Migration Project.@  On August 4, 1997, TSLCI notified Comsys that
it intended to bring suit for negligence and negligent misrepresentation in
failing to properly perform and supervise work performed on the computer system.  On August 11, 1997, Comsys notified Twin City
that TSLCI was going to file suit against it; Twin City acknowledged receipt of
the notice.  On September 11, 1997, TSLCI
sued Comsys for problems with the computer project, asserting claims for
negligence, gross negligence, negligent misrepresentation, DTPA violations,
knowing DTPA violations, and breach of express and implied warranties.  TSLCI also sought damages for overcharges,
loss of revenue, and loss of good will.[1]  Comsys filed a counterclaim against TSLCI for
unpaid work.  

On February 11, 2000, Comsys settled the TSLCI suit at
mediation for $275,000, plus the forgiveness of $114,000 in unpaid work that
Comsys had performed for TSLCI. 
Accordingly, Comsys sought recovery of approximately $139,000 on its
insurance claim.

On March 28, 2000, Twin City denied coverage for Comsys= claim because Comsys settled
the TSLCI suit without obtaining consent in violation of the terms of the
policy.  Comsys brought suit against Twin
City, asserting claims for breach of contract, violations of articles 21.21 and
21.55 of the Texas Insurance Code, and breach of the duty of good faith and
fair dealing.  All parties moved for
summary judgment.  The trial court
granted Twin City=s motion for summary judgment,
while denying Comsys= motion for partial summary
judgment.








In its motion for summary judgment, Twin City asserted that
Comsys was not entitled to coverage under the terms of the policy because (1) Ait forfeited its right to
recover . . . when it settled the lawsuit with TSLCI without Twin City=s . . . consent,@ (2) Amany or all of TSLCI=s claims and alleged damages
are excluded under the policy,@ (3) AComsys cannot meet its burden
of identifying what portion of the settlement, if any, was attributable to
covered claims,@ and (4) it was Anot entitled to recover for the
debt that it >forgave= as part of the settlement.@  The trial court granted Twin City=s motion for summary judgment
without specifying the basis for its ruling.

Coverage Under the Policy

In its first point of error, Comsys contends the trial court
erred in granting the motion for summary judgment because the policy expressly
provides coverage for its claims.








We first observe that in an insurance contract dispute, the
initial burden falls upon the insured to establish coverage under the terms of
the policy.  Venture Encoding Serv.,
Inc. v. Atlantic Mut. Ins. Co., 107 S.W.3d 729, 733 (Tex. App.CFort Worth 2003, pet. denied). 
But while the initial burden fell upon Comsys, Twin City had the burden,
in a summary judgment context, to show that no material fact issue existed and
that it was entitled to judgment as a matter of law.  Rhone-Poulenc, Inc. v. Steel, 997
S.W.2d 217, 222 (Tex. 1999).  Once the
defendant establishes that no genuine issue of material fact exists regarding
an element of the plaintiff=s claim, the plaintiff must
present competent summary judgment evidence raising a fact issue on that
element.  Guest v. Cochran, 993
S.W.2d 397, 401 (Tex. App.CHouston [14th Dist. 1999, no
pet.).  In conducting this review, we
take as true all evidence favorable to the nonmovant, and we make all
reasonable inferences in the nonmovant=s favor.  KPMG Peat Marwick v. Harrison County Hous.
Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  When both sides move for summary judgment and
the trial court grants one motion and denies the other, the reviewing court
should review all summary judgment evidence, determine all questions presented,
and render the judgment the trial court should have rendered.  Bradley v. State ex rel. White, 990
S.W.2d 245, 247 (Tex. 1999).  

Here, the summary judgment reflects that TSLCI sent a demand
letter to Comsys in August 1997, seeking $402,000 in damages.  TSLCI subsequently filed suit against Comsys
on September 11, 1997.  It is apparent
from Twin City=s file notes dated September
16, 1997, that Twin City was aware that the amount of TSLCI=s alleged damages might exceed
the $250,000 self-insured retainer and after a preliminary coverage review,
determined that certain exclusions might apply to preclude coverage of some of
TSLCI=s damages.[2]
 Twin City did not, however, exercise its
right to defend Comsys, but simply asked Comsys if it could obtain a settlement
of less than $250,000.  In an affidavit
submitted in support of Twin City=s motion for summary judgment,
Mike McCallum, litigation specialist for Twin City, stated that in November
1997, Comsys informed Twin City that it thought it could settle the TSLCI suit
within the $250,000 self-insured retention. 
McCallum explained that he called Comsys= defense counsel, David
Chamberlain, in November 1999, to determine whether the case had a true value
over $250,000.  According to McCallum,
Chamberlain told him it might take up to $150,000 to settle the TSLCI case;
Twin City set the reserve at $200,000.

McCallum further stated that he spoke to Amir Alavi, senior
vice president of Comsys, on December 21, 1999, to discuss potential coverage
questions and inquire whether Comsys wanted Twin City to address the coverage
issues at that time or wait until the claim had an obvious value in excess of
the $250,000 retention.  McCallum asserts
that although Alavi told him he would discuss the issue with Comsys= insurance attorney and get
back to him, Alavi did not follow up with him. 
When McCallum next spoke to Alavi on January 21, 2000, Alavi, again, did
not follow up with him.








According to McCallum, on February 3, 2000, Chamberlain
requested that he attend the mediation conference scheduled for February 11,
2000.  On February 7, 2000, Chamberlain
advised McCallum that Comsys had not evaluated the claim in excess of $250,000,
but there had been some discussion about offering $250,000 and waiving the
$114,000 in unpaid bills; Comsys still had not requested a coverage opinion.

On February 9, 2000, two days prior to the scheduled
mediation, Alavi formally requested a coverage opinion from Twin City.  When Alavi called McCallum during the
February 11, 2000 mediation, advising him that the figure under discussion was
in the $350,000 range, McCallum advised him that he could not authorize a
settlement because the claim had not been fully evaluated for coverage or
value.

Also, during the mediation, Alavi faxed a letter to McCallum
informing him that Comsys was in a position to make a settlement offer of
$200,000 in cash plus forgiveness of $114,000 in debt and requesting that
McCallum provide the reasons for Twin City=s unwillingness to acknowledge
coverage.  Responding by letter, McCallum
informed Alavi that Twin City would not be able to render a coverage position
because two days was not adequate time in which to render a final opinion and
further pointed out that Comsys had not provided an evaluation indicating a
valuation in excess of $250,000 and A[o]ur first notice of your
evaluation (based on your current offer to plaintiff) in excess of your
retention was today.@

A month-and-a-half after settlement, Twin City denied
coverage because (1) Comsys was not Alegally obligated@ to pay damages since TSLCI
obtained a settlement rather than a judgment, and (2) Comsys settled without
Twin City=s consent.[3]








Waiver of
the Consent Clause

Comsys contends Twin City
waived the settlement-without-consent provision when it waited a
month-and-a-half after the settlement to finally deny coverage.  Alternatively, Comsys argues that Twin City
is estopped  to rely upon the consent
provisions by its delay in deciding coverage. 
See Minnesota Mut. Life Ins. Co. v. Morse, 487 S.W.2d 317, 320
(Tex. 1972); Farmers Tex. County Mut. Ins. Co. v. Wilkinson, 601 S.W.2d
520, 521 (Tex. Civ. App.CAustin 1980, writ ref=d n.r.e.) (holding the
doctrines of waiver and estoppel may operate to avoid conditions that would
otherwise result in forfeiture of an insurance policy).

Waiver is an intentional relinquishment of a known right or
intentional conduct inconsistent with that right.  Jernigan v. Langley, 111 S.W.3d 153,
156 (Tex. 2003) (per curiam); United States Fid. & Guar. Co. v. Bimco
Iron & Metal Corp., 464 S.W.2d 353, 357 (Tex. 1971).  Waiver can be established by either an
express renunciation of a known right or by silence or inaction for so long a
period as to demonstrate an intention to yield that known right.  Tenneco, Inc. v. Enterprise Prods. Co.,
925 S.W.2d 640, 643 (Tex. 1996). 
Although waiver is generally a fact issue, if facts and circumstances
are admitted or clearly established, it then becomes a question of law.  Motor Vehicle Bd. v. El Paso Indep. Auto.
Dealers Ass=n, Inc., 1 S.W.3d 108, 111 (Tex.
1999).

Twin City responds by asserting that the doctrines of waiver
and estoppel cannot be used to create coverage where none exists by the terms
of the policy.  See Texas Farmers Ins.
Co. v. McGuire, 744 S.W.2d 601, 602B03 (Tex. 1988).  Contrary to Twin City=s assertion, however, Comsys
does not raise waiver and estoppel as a vehicle by which to create coverage
under the policy;  rather it asserts Twin
City has waived, or is estopped to rely on, this forfeiture provision by
waiting until after a mediated settlement to deny coverage.  Thus, the pivotal issue to be determined is
at what point in the aforementioned proceedings did Twin City have a duty to
determine coverage.








An insurer must, Awithin a reasonable time,@ either Aaffirm or deny coverage of a
claim@ or Asubmit a reservation of rights@ to the policyholder.  Tex.
Ins. Code Ann. art. 21.21, ' 4(10)(v) (Vernon Supp.
2003).  In a general liability policy,
the insurer=s duty to defend arises with
the filing of a suit against its insured, and this duty to defend is determined
by comparing the allegations in the pleadings with the language of the
insurance policy.  National Union Fire
Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997).  Thus, when the insurer has a duty to defend,
it must decide the issue of coverage within a reasonable time after the filing
of a suit.

However, the duty to defend and the duty to indemnify are
distinct and separate duties.  Trinity
Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 821B22 (Tex. 1997).  Unlike the duty to defend, the duty to
indemnify is based on facts proven, not on pleadings.  Pilgrim Enter., Inc. v. Maryland Cas. Co.,
24 S.W.3d
488, 492 (Tex. App.CHouston
[1st Dist.] 2000, no
pet.).  Thus, Athe duty to indemnify only
arises after an insured has been adjudicated, whether by judgment or
settlement, to be legally responsible for damages in a lawsuit.@  Collier v. Allstate County Mut. Ins. Co.,
64 S.W.3d
54, 62 (Tex. App.CFort
Worth 2001, no
pet.).  Thus, when the insurer has only a
duty to indemnify, it must decide the issue of coverage within a reasonable
time after judgment or settlement.








Here, the policy at issue obligates Twin City to indemnify,
but not defend Comsys.  For example, the
policy promises to pay on behalf of the insured Aall sums which the insured
shall become legally obligated to pay as damages.@  (emphasis added).  Moreover, the policy states that the Ainsured against whom a >claim= is made shall have the duty to
defend any >suit= seeking damages@; the Ainsured will . . . have the obligation
of paying any defense counsel selected by or on behalf of the insured and all
defense costs@; and the insurer Ashall not be obligated to
assume charge of, participate in, or pay for the investigation or defense of
any Aclaim@ or Asuit.@  (emphasis added).  Notwithstanding these disclaimers, the policy
also provides that if the suit is Areasonably likely@ to result in damages in excess
of the self-insured retention, Twin City has Athe right but not the duty to
assume control of the defense.@  Accordingly, if Twin City wanted to exercise
its right to defend, it was obliged to decide coverage issues within a
reasonable time after TSLCI filed its suit. 
On the other hand, if Twin City chose only to indemnify, it was obliged
to decide coverage issues within a reasonable time after the settlement.

Here, the policy provides that no insured will, Aexcept at [its] own cost, make
or agree to any settlement for a sum in excess of the >self-insured retention= without our consent.@  But Twin City could not unilaterally obstruct
a settlement agreement because the policy also provides that where the insured
is willing to accept a settlement offer, and the insurer is not, the insurer Ashall have the right to
litigate in lieu of such settlement and will bear all >claim expenses= subsequently incurred and any
damages in excess of the amount for which the >claim= could have been settled.@  Accordingly, under the terms of the policy,
Twin City was obliged to either consent to the settlement agreement or assume
the responsibility of defending Comsys. 
Twin City did neither.

An insurer may forfeit its right to control settlements when
it violates its own contractual obligation to an insured.  22-137 Holmes=
Appleman on Insurance 2d Insured May Settle Claim ' 137.10 [A][1] (2003).  If an insurer has breached its covenant,
whether the breach is express or implied, the insured is free, despite limiting
policy provisions, to protect his or her own interest in minimizing potential
liability in excess of limits by agreeing to a reasonable good‑faith
settlement.  Id.

It is undisputed that Comsys asked Twin City to attend the
mediation conference more than a week before it occurred.  Twin City chose not to participate in the
settlement negotiations.  The only reason
given by Twin City for refusing to attend the settlement conference was that it
did not have sufficient time to investigate coverage issues.  However, as we have already observed, there
were no coverage issues to be resolved prior to settlement unless Twin City
exercised its option to defend which it did not do during the two-and-a-half
years in which the suit was pending.








Twin City cites Munster Steel Company v. Travelers
Indemnity Company for the proposition that mere silence or acquiescence to
mediation is insufficient to establish waiver of the consent provision.  620 S.W.2d 771, 772 (Tex. Civ. App.CDallas 1981, no writ).  In Munster Steel, the court held that
where the insurer was kept informed of settlement negotiations, but failed to
object and further failed to disapprove the settlement upon receipt did not
constitute waiver of the consent provision. 
Id.  In concluding that the
insured failed to establish a fact issue on waiver, the court specifically
stated that Awaiver cannot be inferred from
mere silence.@  Id. 
However, the Supreme Court of Texas has held that waiver can be
established by silence or inaction for so long a period as to show an intention
to yield the known right.  Tenneco,
Inc., 925 S.W.2d at 643.  Moreover,
as we have previously observed, remaining silent was not an option available
under the terms of this policyCTwin City was required to
either consent to the settlement or assume the defense.

Prejudice

Even if Twin City did not waive the Aconsent@ provision, such a provision Awill not operate to discharge
the insurer=s obligations under the policy
unless the insurance company is actually prejudiced or deprived of a valid
defense by the actions of the insured.@  McGuire v. Commercial Union Ins. Co.,
431 S.W.2d
347, 353 (Tex. 1968).  Twin City argues
that Texas courts have only applied the prejudice requirement with regard to a
consent provision in the uninsured motorist context and, therefore, it is not
clear if such a requirement exists in this case.  See Hernandez v. Gulf Group Lloyds,
875 S.W.2d 691, 693 (Tex. 1994) (explaining that in cases involving
underinsured motorist claims, there may be instances where settlement without insurer=s consent will prevent Athe insurer from receiving the
anticipated benefit from the insurance contract; specifically, the settlement
may extinguish a valuable subrogation right,@ but where any extinguished
subrogation right has no value, there is no material breach of the
settlement-without-consent clause).  








To the contrary, the prejudice requirement has also been applied
in a non-uninsured motorist context involving a consent provision.  See Insurance Co. of N. Am. v. McCarthy
Bros. Co., 123 F. Supp. 2d 373, 379B80 (S.D. Tex. 2000).  To enforce a condition precedent to coverage,
the insurer must prove that it was prejudiced by the insured=s failure to comply with the
relevant condition.  Id. at 379
(citing Hernandez, 875 S.W.2d at 692B94).  In requiring that the insurer establish
prejudice, Texas law recognizes that only a material breach excuses
performance.  Id.; Hernandez,
875 S.W.2d at 693 (explaining that where insurer is not prejudiced by
settlement, insured=s breach is not material).  The mere fact that the insurer owes money
that it does not wish to pay does not constitute prejudice as a matter of
law.  McCarthy Bros. Co., 123 F.
Supp. 2d at 379.  Texas law does not
presume prejudice in settlement-without-consent cases.  Hanson Prod. Co. v. Americas Ins. Co.,
108 F.3d 627, 631 (5th Cir. 1997).  








Twin City contends that even if it must establish prejudice,
it, nonetheless, has shown it was prejudiced by Comsys= settling the TSLCI suit
without consent because it was deprived of the opportunity to evaluate the
settlement and verify that it was covered by the policy.  In September 1997, Twin City knew some
exclusions might apply to TSLCI=s claims.  Moreover, although McCallum was asked to
attend the mediation on behalf of the insurers, he did not.  We recognize that establishing prejudice may
be a difficult burden.[4]  However, Twin City has not raised even an
inference of collusion, fraud, or other connivance in the settlement agreement.

Having declined to defend Comsys, Twin City could not frustrate
Comsys= effort to defend itself by
obtaining what it believed to be a favorable mediated settlement
agreement.  In other words, Twin City
could not obstruct a settlement by refusing to attend the mediation conference
and then assert the settlement was obtained without its consent.  Accordingly, we find (1) there is a fact
issue regarding whether Twin City waived its right to rely upon the
no-settlement-without-consent provision of the policy, and (2) it was, in any
event, not prejudiced by the settlement agreement.  Appellant=s first point of error is
sustained.

Policy Exclusions

In its second point of error, Comsys contends the trial
court erred in finding that certain policy exclusions applied to deny coverage.








As an initial matter, Comsys contends Twin City waived
reliance on any exclusionary provisions in the policy because (1) they were not
raised in the letter denying coverage and (2) Twin City took actions
inconsistent with any such exclusions by assuming its defense.  While Twin City stated in its letter denying
coverage that Comsys violated the terms of the policy by settling without its
consent, it further explained that Athere may be other policy
conditions, exclusions or provisions that might apply, limit or preclude
coverage and we do not wave [sic] any rights under the policy or the law,
whether specifically mentioned herein or not.@  Further, while Twin City monitored and
investigated TSLCI=s claims to some extent, such
conduct does not constitute an assumption of the defense.  See Arkwright-Boston Mfrs. Mut. Ins. Co.
v. Aries Marine Corp., 932 F.2d 442, 445 (5th Cir. 1991) (finding no
authority to support proposition that insurer=s participation in settlement
negotiations, when insured has retained independent counsel, is tantamount to
assuming insured=s defense); American Eagle
Ins. Co. v. Nettleton, 932 S.W.2d 169, 174 (Tex. App.CEl Paso 1996, writ denied)
(rejecting argument that by continuing to investigate, by acting on behalf of
insureds, and by conducting settlement negotiations even after insureds refused
to sign reservation of rights letter, insurer waived all of its policy
defenses).  Thus, we do not find Twin
City waived any exclusions in the policy.

While the insured bears the initial burden of showing the
claim against it is covered by the policy, the insurer bears the burden of
proving the applicability of an exclusion that permits it to deny
coverage.  Once the insurer proves the
applicability of an exclusion, the burden then shifts back to the insured to
demonstrate that it has coverage under an exception to the exclusion.  Canutillo Indep. Sch. Dist. v. National
Union Fire Ins. Co. of Pittsburgh, Pa., 99 F.3d 695, 701 (5th Cir. 1996); Venture
Encoding Serv., Inc., 107 S.W.3d at 733; Telepak v. United Servs. Auto.
Ass=n, 887 S.W.2d 506, 507B08 (Tex. App.CSan Antonio 1994, writ
denied).  

The interpretation of an insurance contract is governed by
the general rules of contract interpretation. 
Texas Farmers Ins. Co. v. Murphy, 996 S.W.2d 873, 879 (Tex.
1999).  Our primary concern is to
ascertain the true intentions of the parties as expressed in the written
instrument.  Lenape Res. Corp. v.
Tennessee Gas Pipeline Co., 925 S.W.2d 565, 573 (Tex. 1996).  If a contract can be given only one
reasonable meaning, it is not ambiguous and will be enforced as written.  State Farm Fire & Cas. Co. v. Vaughan,
968 S.W.2d 931, 933 (Tex. 1998).  On the
other hand, if a contract is susceptible to two or more reasonable
interpretations, it is ambiguous.  Kelley-Coppedge,
Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998).  Whether a contract is ambiguous is a question
of law for the court to decide by examining the entire contract in light of the
existing circumstances at the time the contract was entered.  Id. 









AWhere an ambiguity
involves an exclusionary provision of an insurance policy, we >must adopt the construction . .
. urged by the insured as long as that construction is not unreasonable, even
if the construction urged by the insurer appears to be more reasonable or a
more accurate reflection of the parties= intent.=@  Balandran v. Safeco Ins. Co. of Am., 972
S.W.2d 738, 741 (Tex. 1998) (quoting National Union Fire Ins. Co. of
Pittsburgh, Pa. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991))
(emphasis added).  Thus, courts employ
the doctrine of contra proferentem, or construing a contract term
against the insurer in favor of coverage, only when construing an ambiguous
policy provision.  Evergreen Nat=l Indem. Co. v. Tan It All,
Inc., 111
S.W.3d 669, 676 (Tex. App.CAustin 2003, no. pet.); GTE
Mobilnet of S. Tex. Ltd. Partnership v. Telecell Cellular, Inc., 955 S.W.2d
286, 291 (Tex. App.CHouston [1st Dist.] 1997, writ
denied); see also American States Ins. Co. v. Bailey, 133 F.3d 363, 369
(5th Cir. 1998) (explaining policy exclusions are construed against insurer and
in favor of the insured only when ambiguity exists).  Comsys has not asserted any ambiguity in any
policy provision.

Overcharges

In
its petition, TSLCI sought damages for overcharging.  The petition alleges that ACOMSYS gave [TSLCI] an estimate
of the cost for completing this project, which was approximately $89,000.@  Twin City asserts TSLCI=s claim for damages for
overcharging relates to charges in excess of the $89,000 estimate Comsys gave
TSLCI prior to the commencement of the project and, therefore, is excluded
under section I.2.l of the policy.  Section
I.2.l excludes:

Any injury or damage arising out of
the failure to:

                                                    *        *       
*

(2) Meet the terms of cost
estimates or guarantees, or any delays in the performance of any contract or
agreement . . .

We agree that section I.2.l excludes such damages because it
covers damages Aarising out of the failure to .
. . meet the terms of cost estimates . . . .@








Loss of
Goodwill

In its petition, TSLCI also sought damages for loss of
goodwill.[5]  Twin City contends damages for loss of goodwill
are excluded under section I.2.k, which excludes:[6]


Any
injury or damage arising out of loss of customer faith or acceptance or any
cost incurred to regain customer approval. 









Comsys argues section I.2.k
applies to the insured=s own loss of customer goodwill,
not the client=s (TSLCI) loss of good
will.  However, the policy expressly
purports to be a Aclaims made@ policy specifically
guaranteeing indemnification for claims made Aagainst [the] insured.@  Thus, Comsys= construction of section I.2.k
creates a redundancy in the policy provisions. 
We find a plain reading of section I.2.k, in context with the entire
policy, establishes that it excludes damages for the client=s loss of goodwill, not the
insured=s loss of goodwill.  Had the exclusion been intended to exclude
solely the insured=s damages for loss of goodwill,
it could have specifically stated AYour (insured) injury or damage
arising of loss of customer faith . . . .@ as was expressly stated in
section I.2.g of the policy, which specifically excluded AYour cost of doing business.@[7]

Loss of
Revenue

TSLCI also sought damages for loss of revenue.  In its petition, TSLCI alleged that AOn or about May 28, 1997,
[TSLCI] attempted to switch to the >on-line= system developed by
COMSYS.  The attempted change-over
resulted in a >data processing nightmare,= the loss of data, customers
and revenue.@  Section I.2.n excludes:  

Any injury or damage claimed for any
loss, cost or expense incurred by you or others for the loss of use,
withdrawal, recall, inspection, repair, replacement, adjustment, removal or
disposal of:

(1) AYour product;@

(2) AYour work;@ or

(3) Any property of which Ayour product@ or Ayour work@ forms a part; 

if such product, work, or
property is withdrawn or recalled from the market or from use by any person or
organization because of a known or suspected defect, deficiency, inadequacy or
dangerous condition in it. 








Twin City argues TSLCI was not able to use the system
because of defects.  Comsys contends
section I.2.n requires that the product or work be Awithdrawn or recalled@ from use as provided under subsection
three.  Comsys explains that TSLCI=s allegations for lost revenue
were not based on Adown time,@ but rather its losses were
caused by the system while it was in use, i.e., delays in the system,
and subsequent loss of production by its sales personnel, not from the Awithdrawal@ or Arecall@ of its product or work.  We are unable to discern from the summary
judgment record whether TSLCI=s claim for damages are due to Aloss of use@ of A(1) >[Comsys=] product;= (2) >[Comsys=] work;= or (3) Any property of which >[Comsys=] product= or >[Comsys=] work= forms a part; if such product,
work or property is withdrawn or recalled . . . from use . . . .@  Twin City did not satisfy its burden to
establish that TSLCI=s claim for loss of revenue
damages is excluded under the policy and, thus, this issue must be remanded to
the trial court for further consideration.

Costs of
Doing Business

TSLCI=s petition also alleged that
Comsys Acharged Plaintiff in excess of
$100,000.00 to repair a system it had defectively designed, developed and
implemented.@  Twin City asserts such damages are excluded
under section I.2.g, which excludes: 

Your costs of doing business.  This includes the costs or expenses of
performing additional services to correct deficiencies in the original services
you performed.[8]  

Twin City argues the policy excludes costs related to TSLCI=s claim for damages associated
with Comsys= attempts to repair the system
it had developed for TSLCI because such damages are related to A[Comsys=] costs of doing business.@  Comsys, on the other hand, argues section
I.2.g excludes only the insured=s own expenses incurred in making
repairs to its own work; therefore, TSLCI=s costs incurred in having the
defective work repaired, even if such repair work is performed by the insured
(Comsys) is not excluded.

Exclusions like the one referenced here are commonly
referred to as Abusiness risk@ exclusions.  T.C. Bateson Const. Co. v. Lumbermens Mut.
Cas. Co., 784 S.W.2d 692, 695 (Tex. App.CHouston [14th Dist.] 1989, writ
denied).  Such exclusions are designed to
protect insurers from the insured=s attempt to recover funds to
correct deficiencies caused by the insured=s questionable
performance.  The exclusion reflects the
insurers= belief that the cost of not
performing well is a cost of doing business and is not part of the risk-sharing
scheme for which the policy has been written.  Id.








Here, TSLCI=s claim for $100,000, which
reflects Comsys= attempts to correct a
defectively designed product, represents Comsys= cost of doing business.  Accordingly, the claim is excluded from
coverage by the terms of the policy.

Unpaid
Work

Twin City also contends the
$114,000 representing unpaid work Comsys had performed for TSLCI and for which
Comsys sought to recover from TSLCI in its counterclaim, is excluded under
section I.2.g as A[Comsys=] cost of doing business.@  We agree. 
Comsys= claim for unpaid bills is
undoubtedly the cost of its doing business and is excluded by section I.2.g of the
policy.

Express and Implied Warranties

With
respect to its claims for breach of express and implied warranties, TSLCI
alleged the following in its petition:

Despite
the representations and warranties made by Defendant COMSYS concerning its
competence and efficiency, Defendant did not perform its obligations under the
Project Charter in a good and workmanlike manner . . . Defendant=s failure to properly perform
the work set forth in the Project Charter and the repairs ordered constitutes a
breach of contract and breach of express and implied warranties. . . .  Defendant breached the express warranties
made about their [sic] services, goods and work . . . .

Twin City
asserts the policy excludes TSLCI=s breach of express and implied
warranty claims.  Section I.2.y excludes:

y.       Any Aclaim@ arising from the breach of any
express warranty or guarantee excluding representations made at any time with
respect to fitness, quality, durability, performance or use of Ayour work@ or Ayour product.@

Section
I.2.1 excludes:

1.       Any injury or damage arising out of the failure to:








*  *  *

(2)     Meet the terms
of cost estimates or guarantees, or any delays in the performance of any
contract or agreement; . . . .

We find TSLCI=s claim for breach of express
warranty is expressly covered by the policy because the policy exclusion relied
upon by Twin City specifically excepts claims regarding the fitness, quality,
durability, performance, or use of Comsys= product.  This is precisely the claim made by TSLCI;
thus, it is excepted from the exclusion. 
Moreover, while the policy excludes claims for failure to meet cost
guarantees, we cannot reasonably construe this provision as an exclusion of
either express or implied warranty claims relating to Comsys= warranties regarding its
services, goods, or workmanship.

AKnowing@ DTPA Violations

In
support of its claim for additional damages under the DTPA, TSLCI alleged that
Comsys Aknowingly@ violated the DTPA.  Twin City asserts such knowing conduct is
excluded from the policy=s coverage.  Sections I.2.a and c of the policy exclude:

a.       Intentional acts, errors or omissions by or at the direction
of the insured.

                                                    *        *       
*

c.       Any injury or
damage arising out of willful, dishonest, fraudulent, criminal or malicious
acts, errors or omissions by or at the direction of the insured.

A plaintiff is entitled to additional damages under the DTPA
if it establishes that a violation was committed Aknowingly.@  Tex.
Bus. & Com. Code Ann. ' 17.50(b)(1) (Vernon
2002).  Here, the policy excludes (1) Aintentional@ wrongdoing and (2) Awillful, dishonest, fraudulent,
or criminal@ wrongdoing.

AIntentionally@ is defined under the DTPA as: 








actual awareness of the falsity,
deception, or unfairness of the act or practice, or the condition, defect, or
failure constituting a breach of warranty giving rise to the consumer=s claim, coupled with the specific intent
that the consumer act in detrimental reliance on the falsity or deception or in
detrimental ignorance of the unfairness. 


Tex. Bus. & Com.
Code Ann. ' 17.45(13) (Vernon 2002)
(emphasis added).  As contrasted with Aintentionally,@ Aknowingly@ is a lower mental state.  See Comm.
on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges
PJC 102.21 (2002) (explaining that Adifference between >knowledge= and >intent= is that >intent= requires the defendant
specifically intended that the consumer act in detrimental reliance@).  Thus, DTPA claims are not excluded under
Section I.2.a of the policy.

However, Section I.2.c also excludes Adishonest, fraudulent, criminal
or malicious acts.@  Thus, this section excludes specific types of
conduct rather than mental states (as in Section I.2.a of the policy).  As in criminal law, several mental states
have been recognized and distinguished. 
For example, the terms Agross negligence,@ Aknowing,@ Awillful,@ and Aintentional@ lie on an escalating continuum
with Agross negligence@ being the lowest mental state
and Aintentional@ being the highest.  Luna v. North Star Dodge Sales, Inc.,
667 S.W.2d 115, 118 (Tex. 1984).  For
purposes of the DTPA, Aknowingly@ is defined as Aactual awareness, at the time
of the act or practice complained of, of the falsity, deception, or unfairness
of the act or practice giving rise to the consumer=s claim . . . .@  Tex.
Bus. & Com. Code Ann. ' 17.45(9) (Vernon 2002).   The Texas Supreme Court has noted that
actual awareness does not mean Amerely that a person knows what
he is doing; rather, it means that a person knows that what he is doing is
false, deceptive, or unfair.@  St. Paul Surplus Lines Ins. Co. v. Dal‑Worth
Tank Co., 974 S.W.2d 51, 54 (Tex.1998). 
AIn other words, a person must
think to himself at some point, >Yes, I know this is false,
deceptive, or unfair to him, but I=m going to do it anyway.=@  Id. 
Moreover, dishonest, fraudulent, and criminal acts may, and frequently
are, committed Aknowingly.@  Accordingly, we find, TSLCI=s DTPA claims are excluded
under Section I.2.c of the policy.








Punitive
Damages

Claiming gross negligence, TSLCI also sought punitive
damages for actions committed with malice. 
Twin City asserts punitive damages are also excluded under the
policy.  AMalice@ for the purpose of recovering
punitive damages means:

(A) 
a specific intent by the defendant to cause substantial injury to
the claimant; or 

(B) 
an act or omission:

(I) 
which when viewed objectively from the standpoint of the actor at the
time of its occurrence involves an extreme degree of risk, considering the
probability and magnitude of the potential harm to others; and 

(ii)  of which the actor has actual, subjective
awareness of the risk involved, but nevertheless proceeds with conscious
indifference to the rights, safety, or welfare of others.

Tex. Civ. Prac. &
Rem. Code Ann. ' 41.001(7) (Vernon 1997)
(emphasis added); see also Hartford Cas. Ins. Co. v. Powell, 19 F. Supp.
2d 678, 682 (N.D. Tex. 1998) (explaining that Texas law requires proof of
conduct Aclosely akin to an intention to
harm@).  Because the policy excludes intentional acts,
we find damages for actions committed with malice are excluded under section
I.2.a of the policy.  We further conclude
punitive damages supported by malice are excluded by section I.2.c, which
excludes Amalicious acts.@








In light of our finding that some of TSLCI=s claims are covered under the
policy and others are excluded, Twin City contends Comsys failed to meet its
burden to segregate the damages and, thus, is precluded from any recovery under
the policy.  An insured is not entitled
to recover under an insurance policy unless it proves its damages are covered
by the policy.  Employers Cas. Co. v.
Block, 744 S.W.2d 940, 944 (Tex. 1988), overruled in part on other
grounds by State Farm Fire & Cas. Co. v. Gandy, 925 S.W.2d 696 (Tex.
1996); Wallis v. United Servs. Auto. Ass=n, 2 S.W.3d 300, 303 (Tex. App.CSan Antonio 1999, pet.
denied).  Under the doctrine of
concurrent causes, when covered and non-covered perils combine to create a
loss, the insured is entitled to recover that portion of the damage caused
solely by the covered peril.  Allison
v. Fire Ins. Exchange, 98 S.W.3d 227, 258 (Tex. App.CAustin 2002, no pet.); State
Farm Fire & Cas. Co. v. Rodriguez, 88 S.W.3d 313, 320B21 (Tex. App.CSan Antonio 2002, pet. denied);
Wallis, 2 S.W.3d at 302B03.  The doctrine of concurrent causation is not
an affirmative defense or an avoidance issue; instead, it is a rule embodying
the basic principle that insureds are not entitled to recover under their
insurance policies unless they prove their damage is covered by the policy. Allison,
98 S.W.3d at 258.  The insured must present
some evidence upon which the jury can allocate the damages attributable to the
covered peril.  Id.at 258B59.  Because the insured can recover only for
covered events, the burden of segregating the damage attributable solely to the
covered event is a coverage issue for which the insured carries the burden of
proof.  Rodriguez, 88 S.W.3d at
321; Wallis, 2 S.W.3d at 303. 
Otherwise, failure to segregate covered and noncovered perils is fatal
to recovery.  Allison, 98 S.W.3d
at 259.  

Comsys,
however, argues it had no duty to segregate damages in this case, i.e.,
in a third-party liability insurance context. 
In Warrilow v. Norrell, the Corpus Christi Court of Appeals
explained the difference between liability under a first-party policy and a
third-party policy:

In Texas, if one force is covered and
one force is excluded, the insured must show that the property damage was
caused solely by the insured force, or he must separate the damage cause by the
insured peril from that caused by the excluded peril.

                                                    *        *       
*








[I]n
the third-party liability insurance context, the right to coverage is
established by traditional tort concepts of fault, proximate cause, and
duty.  By insuring for personal liability
and agreeing to cover the insured for his own negligence, the insurer agrees to
cover the insured for a broader spectrum of risks.  Thus, the focus is on the insured=s legal obligation to pay for
an injury or damage arising out of a certain occurrence, and coverage should
extend to an insured risk, negligence, which constitutes a concurrent proximate
cause of the injury.  By finding
coverage, for an injury resulting from the insured=s negligence, the reasonable
expectations of the parties to the insurance contract are not frustrated.  Our application of Partridge[9]
does not expand the insurer=s potential liability, as would
be the case in the first-party property insurance context.

791 S.W.2d 515, 527B28 (Tex. App.CCorpus Christi 1989, writ
denied) (citations omitted). 

Comsys urges us to adopt the position taken in Warrilow.  Twin City, on the other hand, argues the
doctrine of concurrent causes is not limited to first party insurance cases,
but has been applied to third party insurance cases.  We agree. 
The greater weight of authority supports this conclusion.  See, e.g., Enserch Corp. v. Shand Morahan
& Co., 952 F.2d 1485, 1494 (5th Cir. 1992) (reversing and remanding for
findings to make necessary apportionment, explaining that Awe cannot allow an insured to
settle allegations against it (some of which might be covered by its insurance,
some of which might not) for its policy limits and then seek full
indemnification from its insurer when some of that settled liability may be for
acts clearly excluded by that policy@); Society of Prof=ls in Dispute Resolution, Inc.
v. Mt. Airy Ins. Co.,
1997 WL 711446, at *7 (N.D. Tex Nov. 7, 1997) (finding insurer was not
precluded from contesting coverage of certain claims for purposes of
apportionment of settlement amounts where settlement did not address whether
any part of liability was covered by policy); Willcox v. American Home
Assur. Co., 900 F. Supp. 850, 856 (S.D. Tex. 1995) (stating that damages
recited in judgment or settlement of underlying lawsuit must be apportioned
between covered and noncovered claims); Winn v. Continental Cas. Co.,
494 S.W.2d 601, 605 (Tex. Civ. App.CTyler 1973, no writ) (finding
no evidence indicating attempt on appellant=s part to apportion settlement
between alleged civil coverage and admitted criminal noncoverage where
appellant had burden as insured).  








Twin City maintains that because neither the memorandum of
agreement nor the final settlement agreement between TSLCI and Comsys contains
an apportionment of the settlement payment among the various claims and
measures of damages, Comsys has failed to meet its burden.  A review of the memorandum agreement and
final settlement agreement reflects that neither apportions the settlement
between covered and noncovered claims and damages.

However, Comsys offered some evidence of allocation of
damages.  In his affidavit, Amir Alavi,
senior vice president of Comsys, explained that before mediation, TSLCI=s expert issued an additional
opinion regarding Comsys= negligence with regard to work
performed on the new computer system.  On
the day prior to mediation, Alavi learned that Comsys= expert was in agreement with
TSLCI=s expert=s opinion and was going to
testify to that effect at deposition scheduled for the week following
mediation.  Alavi explained that A[i]n settling this suit, I was
mindful of TSLCI=s new expert opinion that
Comsys was negligent, and believed that the settlement demand would
substantially increase if the case was not settled at mediation.@  Also, in its answers to interrogatories
propounded in the underlying suit, TSLCI set forth amounts for some of the
damages it sought.  We conclude Comsys
has raised a fact issue with regard to allocation of damages in the settlement.  See Enserch Corp., 952 F.2d at 1494
(explaining that there were several possible sources in allocating claimant=s damages such as allegations
contained in complaint in underlying lawsuit, and facts that would have been
subject of lawsuit had it been tried).

Accordingly, to the extent Comsys contends that no policy
exclusions applied to TSLCI=s claims, the contention is
overruled.  However, we find that some
of TSLCI=s claims are covered under the
policy.  Further, because some evidence
was offered regarding the allocation of damages under the settlement agreement,
a fact issue exists as to whether the sum of the covered claims exceeds the
$250,000 self-insured retention.  Thus,
summary judgment was inappropriate.








Breach of Statutory Duty

In its third point of error,
Comsys claims Twin City was not entitled to summary judgment because it
breached its duty under Article 21.21 of the Texas Insurance Code to provide a
coverage opinion and reservation of rights letter within a reasonable amount of
time.  As we have previously stated,
because Twin City had no duty to defend (and it never assumed any such duty),
it had no duty to decide coverage until after an adjudication of TSLCI=s claims whether by settlement
or a judgment.  Thus, to the extent
Comsys contends Twin City was obliged to render a coverage opinion prior to
settlement that contention is overruled. 
However, Twin City was obliged to decide coverage at or within a
reasonable time after the settlement.  We
find a month-and-a-half delay between settlement and a coverage opinion is
arguably unreasonable and raises a fact issue regarding whether Twin City
breached its duty to provide a coverage opinion and/or reservation of rights
letter under Article 21.21 of the Texas Insurance Code.  Accordingly, appellant=s third point of error is
sustained.

Settlement Without Consent

In its fourth point of error, Comsys contends the trial
court erred in finding it settled without Twin City=s consent.  We have already held there is a fact issue
regarding whether Twin City waived the Ano-consent@ clause in the policy.  Accordingly, appellant=s fourth point of error is
sustained.

Summary








In summary, Twin City sought summary judgment on the grounds
that (1) Comsys forfeited its right to recover under the policy when it settled
the lawsuit with TSLCI without Twin City=s consent, (2) many or all of
TSLCI=s claims were excluded under
the terms of the policy, (3) Comsys failed to meet its burden of identifying
what portion of the settlement, if any, was attributable to claims covered by
the policy, and (4) Comsys was not entitled to recover the debt it Aforgave@ as part of the settlement with
TSLCI.  Twin City=s motion was granted.  We find, however, there is a fact issue as to
whether Comsys forfeited its right to recover by settling the lawsuit without
Twin City=s consent and/or whether Twin
City was prejudiced by the settlement without its consent.  Thus, as to this issue, the trial court=s judgment is reversed and
remanded.  We agree with Twin City=s assertion that the policy
excludes coverage for TSLCI=s claims against Comsys for
overcharging, loss of goodwill, knowing DTPA violations, and punitive damages
supported by malice.  We find no policy
exclusion, however, for claims arising from a breach of express or implied warranties.  We further agree with Twin City that the
burden of identifying the portions of the settlement attributable to claims
covered by the policy fell upon Comsys, but we also find Comsys presented some
evidence on this question creating a fact issue precluding summary judgment.  Thus, as to this issue, the trial court=s judgment is reversed and
remanded.  Finally, we agree with Twin
City=s assertion that Comsys was not
entitled to recover under the policy for debts it allegedly forgave TSLCI.

Comsys sought partial summary judgment on the grounds that
(1) it was Alegally obligated to pay@ damages to TSLCI as a result
of the settlement, (2) Twin City breached the insurance contract by failing to
pay damages to Comsys, (3) the Ano-consent@ settlement clause was
unenforceable, (4) Twin City is estopped from asserting the Ano-consent@ clause or has waived the same,
and (5) Twin City waived its right to assert policy defenses, i.e.,
exclusions.  The trial court denied
Comsys= motion for summary
judgment.  We find, however, that a
settlement (like a judgment) constitutes a legal obligation to pay.  Further we find there is a fact issue as to
(1) whether Twin City breached the insurance contract, (2) whether the Ano-consent@ clause is enforceable, and (3)
whether Twin City is estopped from asserting or has waived the no settlement
clause in the policy.  Finally, we find
Twin City did not waive its right to assert exclusions named in the policy.








Accordingly, fact issues precluding summary judgment are
manifest in the summary judgment record regarding (1) the enforceability of the
Ano-consent@ clause of the policy, (2) what
portions of the settlement are attributable to claims covered under the policy,
and (3) whether Twin City breached the insurance contract.  Thus, the judgment of the trial court is
reversed and the cause is remanded to the trial court for further proceedings
consistent with this opinion.

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment
rendered and Opinion filed December 4, 2003.

Panel consists of Chief Justice
Brister and Justices Yates and Hudson. 
(Chief Justice Brister not participating.)











[1]  Texas State
Low Cost Ins., Inc. v. Metamor Info. Tech. Servs., Inc. f/k/a Comsys Tech.
Servs., Inc. f/k/a Cutler-Williams, Inc., No. 97-10420 (53d Dist. Ct.,
Travis County, Tex. Sept. 11, 1997). 





[2]  The file notes
state exclusions found in sections I.2.l (failure to meet cost estimates or
guarantees) and I.2.y (claims arising from breach of express warranty) Amight apply.@





[3]  As for Twin
City=s Alegal obligation@
argument, a court judgment is not the only manner by which Comsys could become
legally obligated to pay TSLCI=s claim.  Texas
Prop. and Cas. Ins. Guar. Ass=n
v. Boy Scouts of Am., 947 S.W.2d 682,
691 (Tex. App.CAustin 1997, no writ). 
A legal obligation can also arise out of a contract, such as a
settlement.  Id.





[4]  The
requirement of showing prejudice was strongly criticized in Gates Formed
Fibre Products, Inc. v. Imperial Casualty. & Indemnity Co., et al., 702
F. Supp. 343 (D. ME. 1988).  There the
court wrote:

Prejudice
arising from a lack of notice to the insurer may be very difficult to
establish.  To establish prejudice, the
insurer would have to prove that the result of the settlement negotiations
would have been more favorable to it had it received notice and been permitted
to participate in settlement negotiations. 
This would place an unfair burden on the insurer to prove what is
really, at best, almost always a highly speculative fact.  To require a demonstration of substantial
detriment to the insurer as a result of lack of notice would therefore
seriously impair the practical efficacy of the cooperation clause . . . if it
does not eviscerate it entirely.

Id. at 348.





[5]  Relying on
TSLCI=s answers to interrogatories propounded by Comsys in
the underlying suit, Comsys asserts TSLCI was not seeking damages for loss of
goodwill.  Contrary to this assertion,
Comsys asked TSLCI in Interrogatory No. 11 whether TSLCI had Alost any good will due to the incident made the
basis[.]@  TSLCI
answered:

Objection.  Discovery is on-going in this dispute and
Plaintiff reserves its right to supplement this response.  Subject to this objection, please see
Plaintiff=s response to Interrogatory No. 10.

TSLCI clearly reserved its right to supplement its
response on damages for loss of goodwill. 
Furthermore, in its petition, TSLCI specifically listed loss of goodwill
among the myriad damages it was seeking. 





[6]  Comsys
mistakenly states that Twin City is relying on section I.2.k to exclude damages
for loss of revenue.  In its appellate
brief, Twin City specifically states section I.2.k excludes goodwill damages.  In its motion for summary judgment, Twin City
asserted A[d]amages for delay costs, overcharging, loss of
revenue, and loss of goodwill are expressly excluded under paragraphs (g), (k),
(l) and (n).@  





[7]  Emphasis
added.  





[8]  Emphasis
added.





[9]  State Farm
Mut. Auto. Ins. Co. v. Partridge, 10 Cal. 3d 94, 514 P.2d 123 (1973)
(involving concurrent causation as it applied to third-party liability
insurance coverage).  The California
Supreme Court held Athat coverage under a liability insurance policy is equally
available to an insured whenever an insured risk constitutes simply a
concurrent proximate cause of the injuries.@  Id. at 104B05, 514
P.2d at 130.  The Partridge court
reasoned A[t]hat multiple causes may have effectuated the loss
does not negate any single cause; that multiple acts concurred in the
infliction of injury does not nullify any single contributory act.@  Id. at
105, 514 P.2d at 130B31.